IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**STACEY R. LONG,**

      Petitioner,

      v.

**BRIGHAM SLOAN**, Warden,

      Respondent.

Case Number 1:16 CV 333

Judge James S. Gwin

Magistrate Judge James R. Knepp II

REPORT AND RECOMMENDATION

### INTRODUCTION

*Pro se* Petitioner Stacey Long ("Petitioner"), a prisoner in state custody, filed a petition seeking a writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1). Respondent, Warden Brigham Sloan, filed an answer (Doc. 13) with supplemental exhibits (Docs. 13-1, 23) and transcripts (Docs. 14-1, 14-2). The district court has jurisdiction over this petition under 28 U.S.C. § 2254(a). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(2). (Non-document entry dated February 22, 2016). Following review and for the reasons stated below, the undersigned recommends the Petition be denied.

### FACTUAL BACKGROUND

For purposes of federal habeas corpus review of state-court decisions, findings of fact made by the state court are presumed correct and can be contravened only if the habeas petitioner shows, by clear and convincing evidence, those factual findings are erroneous. 28 U.S.C. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial-court record. *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). In this case, Ohio's Eleventh District Court of Appeals set forth the following findings of fact:

{¶ 2} On Thursday March 7, 2013, Donna Palmatier went to Wendy's at about 7:30 p.m. with Marilyn Price and her daughter. The three of them stayed there for about an hour and a half. Price testified that during their trip, Palmatier did not have bruises on her face and that Palmatier had a regular demeanor. Price dropped Palmatier off at Palmatier's residence at some point between 9:15–10:00 p.m.

{¶ 3} The rooms in Palmatier's third-floor apartment are organized as the following. Upon entering the apartment to the right is a full bathroom, and further back is a bedroom. To the left of the entrance is the kitchen. In the back of the apartment is a large living room, and at the very back of the living room is a sliding glass door that leads to a balcony. At some point after Palmatier arrived at her apartment, Long, who resided and was in a romantic relationship with Palmatier, entered and demanded that Palmatier make him a hamburger. When Palmatier refused, Long said that he could find someone else to make the hamburger. In turn, Palmatier suggested to Long that he leave the key to her apartment and find that other person. Palmatier then went to the bedroom.

{¶ 4} Shortly thereafter, in the bedroom, Long approached Palmatier and started pulling her hair. Palmatier attempted to flee from him and to use her cell phone to call the police. Palmatier made it either to her bedroom door or the front door; however, Long closed the door, grabbed her phone and threw the phone away. The phone landed on the floor resulting in the battery coming out. Long then proceeded to pick her up, throw her and slam her head into the couch in the living room. Palmatier was unsure whether Long picked her up and threw her before he slammed her head into the couch.

{¶ 5} Long tore Palmatier's pants off, pulled her sweatshirt over her head, and punched her three times in the head. Long then "took" her to the balcony and said he was going to throw her off it, and that she would land on his friend's truck resulting in her becoming severely disabled. Palmatier testified that she constantly struggled to prevent Long from opening the sliding door leading to balcony. Palmatier was able to escape and ran toward the dining room table, but only made it to the kitchen floor. While she was on her stomach on the kitchen floor, Long pulled her toward himself, sat on top of her holding a knife and said, "I could cut your jugular vein. Look up because this is the last you're going to see." Palmatier continued to struggle to get away from Long. Eventually, Palmatier turned to face him and asked, "What do you want me to do? I'll do anything you want me to do." Long replied by proclaiming, "This is what I could do to you." He then moved the knife to her chest.

{¶ 6} Long helped her to her feet, put an icepack on her head and moved her to the bedroom where she could lay down. Palmatier testified that at this point her head felt like lead and she was unable to move her head. Long told her that she could call the police now; however, Palmatier did not call the police because she was afraid of provoking Long again. When Palmatier told Long that she thought that she had a

2

concussion, Long told her that she did not have one because he intentionally hit her in locations that would not lead to a concussion.

{¶ 7} Upon waking in the morning on Friday March 8, Palmatier was lethargic and could not move her head. At some point, Palmatier sent a text message to her daughter Amy Beauchamp telling her that she was not feeling well and that therefore Beauchamp should not pick her up. Beauchamp was planning on driving Palmatier back to Michigan to babysit Beauchamp's children for the weekend. When Beauchamp called and asked if she could stop by Palmatier's apartment and visit, Palmatier rebuffed her.

{¶ 8} Concerned, Beauchamp went to the Willowick Police Department and asked them to check on her mother. Officers Gregory Williams and Chris Olp accompanied Beauchamp to her mother's apartment. Long answered the knock on the door; however, when Beauchamp looked inside the apartment, she saw her mother with bruises on her face and asked, "What happened to you?" Beauchamp began to cry and yell. Consequently, the police told her to wait outside the apartment.

{¶ 9} After separating Long and Palmatier, Officer Williams asked Palmatier how she received her injuries. Palmatier was not forthcoming with details about her injuries, but she packed some items into an overnight bag and then left the apartment with the police officers and Beauchamp. Upon reaching the outside where the lighting was better, both Beauchamp and Williams realized Palmatier's injuries were more extensive than previously realized. The pictures taken by police reveal swelling around both eyes, with the left eye having a bad bruise that extends well beyond the perimeter of her eye socket. The pictures also revealed bruising around the left check and the right eye has also sustained bruising.

{¶ 10} When Officer Williams asked Palmatier if she wanted to press charges, Palmatier replied that she did not. She also indicated that she did not want medical care. Beauchamp however indicated that she believed her mother looked dazed and that she was at risk of falling. Beauchamp eventually persuaded her mother to visit the hospital; however, the police requested that Palmatier speak with them before going to the hospital. At the police station, more pictures were taken where her left eye appears blood-red. Palmatier again refused to press charges and declined to provide a written statement to the police. Officer Williams testified that it did not surprise him that a victim of domestic violence would not want to file charges.

{¶ 11} Eventually, Palmatier was taken to Lake West Hospital. When doing intake triage, Palmatier told Adam Ridenour, an emergency room nurse, that she was suffering from dizziness and that she could not tell if she had lost consciousness. Ridenour indicated that an inability to distinguish whether one lost consciousness is usually an indication that the person had lost consciousness. When he asked more about the injuries, she told him that she was assaulted by her boyfriend by being pushed down and repeatedly punched. Ridenour testified that Palmatier complained

3

of back pain and rib pain. Ridenour further testified that when he asked Palmatier to rate her pain on a scale of one to ten, she said her current pain level was at an eight. During the worst part of her assault, she said her pain level was a 10.

{¶ 12} Dr. John Maxfield examined Palmatier. He testified that her chief complaint was vertigo which started 18 hours before seeing him.[1] She also stated that her memory was failing her and she was somehow struck in the chest and she had been struck by a fist. Dr. Maxfield testified that Palmatier had two black eyes and some tenderness over the left check, left lateral chest wall tenderness, and midline tenderness on her neck. Dr. Maxfield indicated that Palmatier suffered a concussion from a blow to the head and a "probable rib fracture." Dr. Maxfield gave her meclizine for the vertigo and promethazine for the nausea, and told Palmatier to follow up with a doctor if her symptoms worsened. Palmatier would stay with at Beauchamp's house for several weeks. During her recovery, Palmatier testified she had difficulty breathing, sitting in certain positions, and could not wear a bra.

FN1: Maxfield examined Palmatier at some point in the late afternoon on Friday. Thus, 18 hours prior to his examination would be close to end of the day Thursday or early morning Friday.

{¶ 13} At some point after the Lake County Prosecutor's Office became involved with the incident, Long sent Palmatier a letter that began as follows: "If you remember that affidavit I did for Mike and Cassy for one of their many situations, same thing. Simply state that 'I, Stacey Long, did not harm or attempt to harm you on or about 3/7/13.' Anything you said contrary prior (sic) was under duress." The letter then instructed Palmatier how to properly notarize the statement with witnesses, told Palmatier to make three copies of the affidavit and send the copies to the clerk of courts. The letter also indicated that "another way" was for Palmatier not to sign for any certified mail and "just don't come." Because a bailiff was to be sent to serve Palmatier, the letter asked her not to open up the door to unexpected guests. The letter closes by instructing, "If you end up here, simply state you don't remember and plead the fifth and state you were under duress when you spoke with the police. Throw this out after you read it." Palmatier disregarded the final instruction and handed the letter over to the prosecutor's office.

{¶ 14} The state also presented clips of phone calls that Long made from jail to his sister. The clips concern Long's desire for Palmatier not to participate in the proceedings. At one point Long acknowledges that his actions reflected misplaced anger that he took out on Palmatier. During their conversation his sister stated, "Yeah, she—you basically jacked her up so bad. I was just so hurt. Damn." Long replied, "Yeah, yeah, but like I said." In the last clip, Long states, "if she was to participate with these folks here, it would be a wrap, sis, you know?"

{¶ 15} Long did not present any witnesses or evidence, and he did not testify on his behalf. Rather, the defense sought to show that Palmatier's injuries were not serious. Specifically, the defense repeatedly procured testimony that she never called the police despite having access to the phone in a room where Long was not present and that she did not tell her daughter or the police what happened to her when they arrived at the apartment. Palmatier also testified that her injuries were not serious enough that she needed to go to the hospital before she gave a statement to the police and turned down the police's offer for an ambulance. Officer Williams testified that when he saw Palmatier she was not crying, hyperventilating or in obvious pain. Officer Williams further testified that Palmatier did not ask for any medical treatment, and was able to walk and speak and think clearly. Finally, Dr. Maxfield indicated that he only knew that the probable rib fracture occurred in the past six weeks, and that it was possible, though unlikely, that Palmatier's vertigo was caused by an upper respiratory infection.

*State v. Long*, 19 N.E.3d 981, 984-86 (Ohio Ct. App. 2014).

## PROCEDURAL BACKGROUND

On May 6, 2013, a Lake County Grand Jury indicted Petitioner on charges of kidnapping, felonious assault, domestic violence, and disrupting public services. (Doc. 13-1, Ex. 1, at 4-5). On May 8, 2013, Petitioner, represented by appointed counsel, Assistant Lake County Public Defender Aaron Schwartz, entered a plea of not guilty to all charges. (Doc. 13-1, Ex. 2, at 6). On May 23, 2013, Petitioner, through counsel, requested: (1) leave to enter a plea of not guilty by reason of insanity, and (2) a psychiatric evaluation to determine sanity and competency. (Doc. 13-1, Ex. 3, at 8). The trial court granted Petitioner's requests. (Doc. 13-1, Ex. 4, at 9). A hearing regarding Petitioner's competency was held on July 1, 2013, at which Petitioner stipulated to the psychological report finding him competent to stand trial, and the court declared him competent. (Doc. 13-1, Ex. 5, at 10). On August 15, 2013, Petitioner moved to withdraw his plea of not guilty by reason of insanity, which the court granted. (Doc. 13-1, Exs. 6, 7, at 11-13).

The case proceeded to jury trial on August 19, 2013. (Doc. 13-1, Ex. 10, at 22). Before and during the trial, Petitioner filed numerous *pro se* motions with the court complaining of his counsel's

deficient performance. (*See* Doc. 23). The state appellate court summarized the proceedings related

to those motions as follows:

{¶ 36} Long filed two motions for ineffective assistance of counsel, and the trial court construed them as motions for substitute counsel. In the first motion, Long complained that his trial counsel waived his preliminary hearing and that decision deprived him of his opportunity to cross-examine Palmatier, that there was a procedure in the court system where he could waive his speedy trial rights in exchange for a reduced sentence, and that his trial counsel had been unsuccessful in obtaining a more desirable plea bargain from the prosecutor.

{¶ 37} At the hearing held on the motion, trial counsel explained that he waived the preliminary hearing because that was a way to reduce bond and to obtain the police report earlier. He also believed that the [*sic*] Palmatier was not present at the preliminary hearing, thereby making the hearing pointless. As to Long's complaint concerning the speedy trial waiver/procedure, the trial court interpreted this complaint as Long seeking to be charged with an information instead of a grand jury indictment and informed Long that he had no right to have an information filed. The trial court also informed Long that he had no right to a plea bargain that satisfied him. Later in the hearing, Long clarified that the only reason he filed the motion was because he sought some information through discovery which he now possessed. He therefore withdrew the motion. When the trial court asked Long if he and his trial counsel could work together, he indicated that they could.

{¶ 38} In his second motion for ineffective assistance of counsel, Long complained that one of his conversations with his trial counsel resulted in an argument and that "Counsels (sic) inertia is deliberate and constitutes 'cruel and unusual punishment' creating additional fear and anxiety as he withholds his skills and knowledge to meet the case of the prosecution." He also complained that there was exculpatory evidence that his trial counsel was not seeking. Finally he complained that he had received a "minimal response" to his motions to the court and letters to trial counsel. Although his letters to trial counsel are not in the record, it appears that Long wrote several motions to the trial court, specifically (1) his objection to the state's motion for a continuance, (2) a motion to dismiss allied offenses of similar import, (3) a motion to dismiss the felonious assault charge as against the manifest weight of the evidence, (4) a request for various lesser-included offense jury instructions, and (5) a motion for exculpatory evidence through discovery.

{¶ 39} The trial court held a hearing on Long's second motion for ineffective assistance of counsel immediately before voir dire. At the hearing, Long claimed that there was another statement of Palmatier's, besides her statement given to the police, that contained exculpatory information. The court and trial counsel were unable to ascertain what other statement Long was referencing as both the prosecution and trial

counsel stated Palmatier only had one statement in the record. The trial court also permitted Long to make a statement for the record.

{¶ 40} In Long's statement, he alleged that his attorney was complicit in prosecutorial misconduct by not seeking medical information that would tend to exculpate Long for the felonious assault charge. He also alleged that his attorney withheld a statement by Palmatier. Finally Long complained that his attorney did not seek to collect phone records which could exonerate him of offenses in some way and that there was a nurse's statement that would exculpate him of some of the charges.

{¶ 41} Trial counsel replied that he had not withheld any information from Long and that trial counsel did not believe any exculpatory statements that Long referenced existed. As for the phone records, trial counsel indicated that he consulted with his supervisor and decided not to seek discovery on the matter. Trial counsel indicated that he could not go into more detail on the record due to his duty of confidentiality. The trial court then denied the motion for ineffective assistance of counsel, and either denied the remaining motions filed by Long or ruled they were moot.

{¶ 42} During the middle of trial, and outside the presence of the jury, Long indicated that he believed that he was going to be forced to testify, which would be prejudicial to his defense. The trial court replied that the decision on whether he had to testify had not come yet, because it was still the middle of the prosecution's case-in-chief. Long then requested that after the prosecution's case-in-chief he wanted to continue the trial pro se. The trial court denied the request as being untimely.

{¶ 43} Finally, after Long's trial counsel moved to acquit after the prosecution's case-in-chief, trial counsel and Long had a "heated" exchange as to whether Long would testify. Long indicated to the court that he was not going to testify. Long again discussed his dissatisfaction with trial counsel's decision not to obtain certain telephone records. When trial counsel asked for a moment to speak to his client in private, he indicated that he had met with his client alone at least 10 times and did not need someone in the room for his safety.

*Long*, 19 N.E.3d at 990-91.

On August 21, 2013, the jury found Petitioner guilty of kidnapping, felonious assault, and domestic violence. (Doc. 13-1, Ex. 9, at 20). It found him not guilty of disrupting public services. *Id*. The trial court sentenced Petitioner on September 23, 2013. (Doc. 13-1, Ex. 11, at 23). It merged Petitioner's felonious assault and domestic violence convictions for sentencing purposes. *Id*. It then

sentenced him to ten years' imprisonment for kidnapping and four years' imprisonment for felonious assault, to be served concurrently, for a total of ten years' imprisonment. *Id*. at 24. The court also ordered that Petitioner be subject to five years of mandatory post-release control and ordered him to pay all court costs. *Id*. at 24-25.

## Direct Appeal

Petitioner, through new counsel, filed a timely notice of appeal to the Eleventh District Court of Appeals, Lake County, Ohio. (Doc. 13-1, Ex. 12, at 26). In his appellate brief, he raised the following assignments of error:

1. The trial court erred to the prejudice of the Defendant-Appellant when it allowed the jury to hear prejudicial and unreliable evidence.

2. Defendant-Appellant was denied effective assistance of counsel in violation of the Sixth Amendment of the United States Constitution.

3. The trial court erred to the prejudice of the Defendant-Appellant when it denied his request for substitute counsel.

4. The trial court erred to the prejudice of the Defendant-Appellant when it returned a verdict of guilty against the manifest weight of the evidence.

5. The trial court erred to the prejudice of the Defendant-Appellant in denying his Motion for Acquittal made pursuant to Crim. R. 29(A).

6. The trial court erred to the prejudice of the Defendant-Appellant by failing to merge allied offenses of similar import.

7. The trial court erred by sentencing the Defendant-Appellant to a term of imprisonment contrary to statute and where its findings were not supported by the record.

(Doc. 13-1, Ex. 13, at 31-34).

On October 6, 2014, the state appellate court affirmed the trial court's judgment. (Doc. 13-1, Ex. 15, at 104-31); *Long*, 19 N.E.3d 981.

On December 8, 2014, Long, *pro se,* filed an untimely notice of appeal and motion for leave to file a delayed appeal in the Ohio Supreme Court. (Doc. 13-1, Exs. 16, 17, at 134-72). On January 28, 2015, the court denied Petitioner's motion and dismissed the case. (Doc. 13-1, Ex. 18, at 173).

## State Habeas Corpus

Meanwhile, on June 12, 2014, Petitioner filed a timely *pro se* petition for writ of habeas corpus in the Eleventh District Court of Appeals, raising the following claim:

> Common pleas court possessed no subject matter jurisdiction to delagate [*sic*] county prosecutor to sentence duty.

(Doc. 13-1, Ex. 19, at 174-75). On July 17, 2014, Petitioner filed a notice of voluntary dismissal, and the case was dismissed. (Doc. 13-1, Exs. 21, 22, at 200-02).

## Application to Reopen Direct Appeal

On January 5, 2015, Petitioner filed in the state appellate court a timely *pro se* application to reopen his direct appeal pursuant to Rule 26(B) of the Ohio Rules of Appellate Procedure. (Doc. 13-1, Ex. 23, at 203-20). In it, he alleged appellate counsel was ineffective for failing to raise the following assignments of error on direct appeal:[1]

1. Appellant was denied effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the Constitution and Article I, § 10 of the Ohio Constitution where his appellate counsel omitted several dead bang winners, prejudicing Appellant to receiving a full review by the court.

2. Appellant was denied his Sixth Amendment right to effective assistance of appellate counsel's failure to raise an issue that is both obvious and clearly stronger then the one's [*sic*] raised[.]

3. Appellant was denied his Sixth Amendment right to effective assistance of appellant counsel, when Appellant's counsel failed to list as an assignment [*sic*] of error that

---

[1] The claims are renumbered for clarity, as Petitioner numbered the first two claims as "Assignment of Error #1."

9

Appellant was forced to go to trial with an attorney with whom he has an irreconcilable difference with.

4.  Appellant argues his convictions for kidnapping and felonious assault were obtained in violation of his Sixth Amendment right to self-representation[.]

5.  Appellant [*sic*] counsel was ineffective for his failure to list an assignment of error that the trial court issued erronious [*sic*] instructions that abduction is a lesser included offense of kidnapping[.]

6.  Appellant [*sic*] counsel was ineffective for his failure to list the assignment of error that trial counsel was ineffective for failing to submit to the jury lesser included offense of felonious assault[.]

7.  Appellant was denied his Sixth Amendment right to effective assistance of appellant [*sic*] counsel when he failed to submit a waiver of court cost[s].

8.  Appellant [*sic*] counsel was ineffective for not challenging the Appellant's violated Sixth and Fourteenth Amendments to a jury drawn from a fair cross section of the community, and under the Fourteenth Amendment to equal protection under the law[.]

9.  Appellant [*sic*] counsel was ineffective for failing to raise ineffective assistance of trial counsel's failure to object to a sentence contrary to law.

(Doc. 13-1, Ex. 23, at 205, 206, 211, 212, 213, 215, 216, 218).

On January 22, 2015, Petitioner filed a motion for leave to amend/supplement his application to include a required affidavit, which the court granted. (Doc. 13-1, Exs. 25, 26, 27, at 225-36). On March 9, 2015, Petitioner filed a motion for leave to file instanter an out-of-time application for reconsideration pursuant to Ohio Appellate Rule 26(A) and a "Supplemental Brief" containing several additional assignments of error. (Doc. 13-1, Exs. 28, 29, at 237-59). On April 9, 2015, Petitioner filed a second request to amend his application to reopen, seeking to assert the following additional assignment of error:

Defendant-Appellant argues that the trial court had erred in entering a conviction of a first-degree felony because the verdict forms and the trial court's subsequent verdict entry were inadequate to support a conviction of kidnapping.

10

(Doc. 13-1, Ex. 32, at 282-83).

On November 17, 2015, the appellate court granted the second motion to amend, overruled the application for leave to file instanter an out-of-time application for reconsideration, and overruled the application for reopening. (Doc. 13-1, Ex. 33, at 286-96).

Petitioner, *pro se*, filed a timely notice of appeal in the Ohio Supreme Court. (Doc. 13-1, Ex. 34, at 297-98). In his memorandum in support of jurisdiction, he raised the following propositions of law:

1. Appellant [*sic*] [c]ounsel was ineffective when he did not list as an assignment of error that Appellant's [k]idnapping and [f]elonious [a]ssault were obtained in violation of Appellant's Six[th] Amendment Right to self[-]representation.

2. Appellant was denied his [S]ixth [A]mendment right to effective assistance of appellate counsel, when [A]ppellant's counsel failed to list as an assignment of error that [A]ppellant was forced to go to trial with an attorney with whom he had an irreconcilable difference with.

3. Appellate counsel was ineffective for his failure to list an assignment of error that trial counsel was ineffective for failing to submit to the jury lesser included offense of felonious assault.

4. Appellant [*sic*] [c]ounsel was ineffective for his failure to list as an assignment of error [t]rial [c]ounsel's failure to submit a waiver of court cost[s].

5. Appellant's counsel was ineffective for failing to raise ineffective assistance of trial counsel's failure to object to a sentence contrary to law.

6. Appellate counsel was ineffective when he failed to submit [A]ppellant's supplemental brief containing avererments [*sic*] for dismissal pursuant to Crim. R. 29, and trial counsel's ineffective assistance for failing to submit mitigating element and whether or not the victim was released in a safe place pursuant to R.C. 2905.01(C).

7. Appellate counsel was ineffective for his failure to list as an assignment of error that the trial court had erred in entering a conviction of a first degree felony because the jury verdict forms were inadequate to support a conviction of kidnapping.

11

(Doc. 13-1, Ex. 35, at 300-01). On April 20, 2016, the court declined jurisdiction. (Doc. 13-1, Ex. 37, at 344).

## FEDERAL HABEAS CORPUS

On January 28, 2016, Petitioner, *pro se*, filed the instant Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254. (Doc. 1). The Petition raises the following seven grounds for relief:

1.  Appellant [*sic*] [c]ounsel was ineffective when he did not list as an assignment of error that Appellant's Kidnapping and Felonious Assault conviction's [*sic*] were obtained in violation of Petitioners [*sic*] Sixth Amendment right of the United States Constitution to [s]elf-[r]epresentation.

2.  Petitioner was denied his Sixth Amendment [r]ight when [h]e [w]as [f]orced [t]o [g]o [t]o [t]rial [w]ith [a]n [a]ttorney [h]e [h]ad [a]n [i]rreconcilable difference [w]ith.

3.  Appellate [c]ounsel was [i]neffective for his failure to list an assignment of error that [t]rial [c]ounsel was ineffective for failing to submit to the jury [l]esser [i]ncluded [o]ffense of [f]elonious [a]ssault.

4.  Appellant was denied his Sixth Amendment [r]ight to [e]ffective [a]ssistance of [a]ppellate [c]ounsel when he [f]ailed to list [t]rial [c]ounsel's [f]ailure to [s]ubmit a [w]aiver of [c]ourt [c]ost[s.]

5.  Appellate counsel was ineffective for failing to raise [i]neffective [a]ssistance of [t]rial [c]ounsel's [f]ailure to [o]bject to a [s]entence [c]ontrary [t]o [l]aw[.]

6.  Appellate [c]ounsel was [i]neffective when he failed to submit Appellant's supplemental brief containing averments for dismissal pursuant to Crim.R.29, and [t]rial [c]ounsel's [i]neffective [a]ssistance for failing to submit [m]itigating [e]lement and [w]hether [o]r [n]ot [t]he [v]ictim [w]as [r]eleased [i]n [a] [s]afe [p]lace [p]ursuant [t]o R.C. 2905.01(C).

7.  Appellate counsel was ineffective for his failure to list as as [*sic*] assignment of error that the [t]rial [c]ourt had erred [i]n entering a conviction of a [f]irst [d]egree [f]elony because [t]he [j]ury [v]erdict [f]orms [w]ere [i]nadequate [t]o [s]upport a [c]onviction [o]f [k]idnapping.

(Doc. 1, at 4, 7, 11, 14-15, 17, 20, 22-23).

On March 28, 2016, Petitioner moved to stay these proceedings and hold them in abeyance pending the exhaustion of state-court remedies. (Doc. 6). The undersigned denied the request on April 26, 2016. (Doc. 8). On May 3, 2016, Petitioner moved to rescind the motion to stay, which the undersigned denied as moot. (Docs. 9, 10). On May 9, 2016, Petitioner filed a motion to amend his petition. (Doc. 11). The undersigned denied that motion because the requested amendments were not substantive. (Doc. 12).

On May 25, 2016, Respondent filed an answer (Doc. 13), with attached exhibits (Doc. 13-1). Respondent then filed a supplement to his answer (Doc. 14), with attached state-court transcripts (Docs. 14-1, 14-2).

On June 10, 2016, Petitioner filed a motion requesting copies of trial transcripts and "discovery." (Doc. 15). Respondent opposed the motion. (Doc. 16). On July 1, 2016, the undersigned granted his request for copies of nine *pro se* motions he filed in state court alleging ineffective assistance of counsel, but denied without prejudice his remaining requests on grounds of mootness, materiality, and relevancy. (Doc. 21). Respondent filed copies of Petitioner's state trial-court *pro se* motions on July 14, 2016. (Doc. 23). On July 25, 2016, Petitioner filed a motion to expand the record. (Doc. 24). Respondent opposed the motion. (Doc. 25). The undersigned denied the request, again on grounds of materiality and relevance. (Doc. 26). Petitioner filed a second motion to expand the record on August 15, 2026. (Doc. 27). Respondent opposed it. (Doc. 28). The undersigned denied the motion on August 31, 2016, as Petitioner failed to meet AEDPA standards to proffer evidence for federal habeas review not in the state-court record. (Doc. 29).

On September 12, 2016, Petitioner filed a second motion to stay these proceedings and hold them in abeyance pending the exhaustion of state-court remedies. (Doc. 30). Respondent opposed

13

it. (Doc. 31). On October 4, 2016, the undersigned denied the motion, because the claim that Petitioner sought to exhaust is procedurally defaulted. (Doc. 32). On November 3, 2016, Petitioner filed a combined second motion to amend his petition and third motion to stay these proceedings until state-court remedies are exhausted. (Doc. 34). Respondent opposed the motion and Petitioner replied. (Docs. 35, 36). The undersigned will address those motions in its review of the Petition.

**JURISDICTIONAL ISSUES**

## <u>Non-Cognizable Claims</u>

*Ground Two: Counsel of Choice*

Petitioner's second ground for relief appears to assert two separate claims, one alleging the trial court erred when it denied his motion to substitute counsel, and another alleging ineffective assistance of counsel.[2] (Doc. 1, at 7-9). As to the former, Petitioner points out that he repeatedly complained to the trial court about the "conflict" and "total lack of communication" between him and his appointed counsel, as well as counsel's poor performance, but was "forced to go to trial with [him]." *Id*. at 7. He notes he filed two motions with the trial court and sent the court two letters alleging "ineffective assistance of counsel." *Id*. at 8; *see also* Doc. 23-1, 23-8, 23-9. The trial court construed the motions as motions for new counsel, and after conducting hearings on the matter, denied them. *See Long*, 19 N.E.3d at 990-91. Petitioner challenged those rulings on direct appeal. *Id.* The appellate court provided a detailed account of the hearings on Petitioner's

---

[2] Petitioner appears to address the confusion regarding the legal basis for his second ground for relief in his most recent motion to amend his Petition and stay these habeas proceedings. (Doc. 34). Although this pleading too is somewhat difficult to discern, Petitioner appears to represent, in countering Respondent's argument that ground two's ineffective-assistance sub-claim is procedurally defaulted, that ground two does *not* allege trial-court error; it alleges *only* ineffective assistance of trial counsel. *Id*. at 4. Nevertheless, the undersigned will address both claims for the sake of clarity and completeness.

motions–excerpted above–and found the trial court did not abuse its discretion in denying Petitioner's requests for new counsel, as the "disagreements over trial strategy" between Petitioner and his attorney were "insufficient to create a complete breakdown in the relationship." *Id*. at 991. Petitioner did not timely appeal the appellate court's judgment. (Doc. 13-1, Ex. 18).

Respondent argues Petitioner's counsel-of-choice claim is not cognizable on federal habeas review. (Doc. 13, at 26-29). The undersigned agrees.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. CONST. amend. VI. The United States Supreme Court has held that "an element of this right is the right of a defendant . . . to choose who will represent him." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006) (citing *Wheat v. United States*, 486 U.S. 153, 159 (1932)). However, "the right to counsel of choice does not extend to defendants who require counsel to be appointed for them." *Id*. at 151 (citing *Wheat*, 486 U.S. at 159). As the Supreme Court has explained, "while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat*, 486 U.S. at 159. In evaluating Sixth Amendment claims, therefore, "'the appropriate inquiry focuses on the adversarial process, not on the accused's relationship with his lawyer as such.'" *Id*. (quoting *United States v. Cronic*, 466 U.S. 648, 657 n.21 (1984)).

Thus, the Supreme Court has made it clear that "those who do not have the means to hire their own lawyers have no cognizable complaint [regarding choice of counsel under the Sixth Amendment] so long as they are adequately represented by attorneys appointed by the court." *Caplin*

15

& *Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989). Petitioner's counsel was appointed. There is no clearly established Supreme Court precedent supporting Petitioner's counsel-of-choice claim, therefore, and this sub-claim of his second ground for relief is not cognizable on federal habeas review.

## Procedural Default

Procedural default occurs when a petitioner fails to fairly present his claims in a federal constitutional context to the highest state court. *O'Sullivan v. Boerckel*, 526 U.S. 838, 839 (1999); *Anderson v. Harless*, 459 U.S. 4, 6 (1982). Federalism and comity generally bar federal habeas corpus review of "contentions of federal law . . . *not* resolved on the merits in the state proceeding due to [the petitioner's] failure to raise them there as required by state procedure." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977) (emphasis in original); *see also Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006).

A petitioner may fail to obtain consideration of a claim by a state court by either: (1) failing to fairly raise it before the state court while state remedies are still available, or (2) failing to comply with a state procedural rule which prevents the state court from reaching the merits of the claim. *Wainwright*, 433 U.S. at 80, 84-87. In either scenario, the claim is procedurally defaulted and may not be considered by the federal court on habeas review. *Seymour v. Walker,* 224 F.3d 542, 549-50 (6th Cir. 2000).

When there is noncompliance with a state procedural rule, the court conducts a four-step analysis to determine whether the petitioner has indeed defaulted and, if so, whether the default may be excused:

    1.    Whether there is a procedural rule applicable to the claim at issue, and whether the petitioner in fact failed to follow it;

2.      Whether the state courts actually enforced their procedural sanction;

3.      Whether the state's procedural forfeit is an "adequate and independent ground" on which the state can rely to foreclose federal review; and

4.      Finally, in order to avoid default, the petitioner can demonstrate that there was "cause" for him to neglect the procedural rule, and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

Demonstrating "cause" requires a petitioner to "show that 'some objective factor external to the defense' prevented the petitioner's compliance with a state procedural rule." *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Demonstrating prejudice requires him to show "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original).

A procedural default will also be excused if the petitioner demonstrates that not excusing the default "will result in a fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991). The Supreme Court has held that such an inquiry requires a petitioner "supplement[] his constitutional claim with a colorable showing of factual innocence." *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986). Maintaining this exception to the rule against reviewing procedurally defaulted claims serves as "an additional safeguard against compelling an innocent man to suffer an unconstitutional loss of liberty." *Stone v. Powell*, 428 U.S. 465, 492-93, n.31 (1976).

*Ground Two: Ineffective Assistance of Trial Counsel*

As noted above, in Petitioner's second ground for relief, he appears to allege in part that his trial counsel provided ineffective assistance of counsel in violation of the Sixth Amendment. (Doc.

17

1, at 7-9). Petitioner provides a lengthy list of deficiencies in his trial counsel's performance, including counsel's failure to: (1) discuss the case with him, (2) interview the victim or potential witnesses, (3) prepare an adequate defense, (4) disclose allegedly exculpatory evidence obtained through discovery, (5) introduce evidence warranting a lesser-included offense jury instruction, and (6) submit mitigating evidence. *Id.* at 8-9. Petitioner cited many of these complaints in the *pro se* motions for substitute counsel that he filed with the trial court, which the court denied after hearings, and on direct appeal challenging the trial court's decisions on those motions. *See Long*, 19 N.E.3d at 989-91; *see also* Doc. 23-1, 23-8, 23-9. He also repeated many of these allegations in his Rule 26(B) application to reopen his direct appeal, but this time as claims his *appellate* counsel was ineffective for having failed to raise them on direct appeal. (*See* Doc. 13-1, Ex. 23, at 206-10).

Respondent argues that Petitioner raised these claims in the state appellate court on direct review, but procedurally defaulted them when he failed to timely appeal the appellate court's decision rejecting the claims to the Ohio Supreme Court. (Doc. 13, at 19-22). Petitioner responds to this argument in his motion to amend his Petition and stay this case, asserting these claims are not procedurally defaulted because he raised them, not on direct appeal, but in a "timely" manner "to both[] the Eleventh Appellate District Court[] and the Ohio Supreme Court." (Doc. 34, at 4). The undersigned construes this to refer to Petitioner's Rule 26(B) application to reopen, the only post-conviction judgment he appealed to the Ohio Supreme Court.

Petitioner is correct that he did not raise these ineffective-assistance claims on direct review. He asserted only one ineffective-assistance claim on direct appeal, in his second assignment of error, but it related to different conduct – his trial counsel's failure to object to certain evidence. (*See* Doc. 13-1, Ex. 13, at 40-42). And, as already noted, Petitioner included many of these allegations about

18

his trial counsel's deficient performance in his third assignment of error on direct appeal, but only in the context of his claim that the trial court erred by not granting his motions for new counsel. *Id.* at 42-44; *see also Long*, 19 N.E.3d at 989-91.

Petitioner is mistaken, however, if he contends that he raised these trial counsel ineffective-assistance claims in his Rule 26(B) application to reopen or that the claims he did raise in the reopening application somehow revived those claims for habeas review.  Ohio Appellate Rule 26(B) provides a procedural mechanism only for raising claims of ineffective assistance of *appellate* counsel, not *trial* counsel.  *See* Ohio R. App. P. 26(B). Moreover, the Sixth Circuit has held that a habeas petitioner's state application to reopen does not preserve the underlying substantive arguments – such as Petitioner's trial counsel ineffective-assistance claims – for habeas review. *See, e.g., Wogenstahl v. Mitchell*, 668 F.3d 307, 338 (6th Cir. 2012) (quoting *Lott v. Coyle*, 261 F.3d 594, 612 (6th Cir. 2001) ("The *Lott* court explained that permitting an Ohio prisoner to raise a substantive claim in a Rule 26(B) motion 'would eviscerate the continued vitality of the procedural default rule; every procedural default could be avoided, and federal court merits review guaranteed, by claims that every act giving rise to every procedural default was the result of constitutionally ineffective counsel.'")).

Petitioner, therefore, has not given state courts "one full opportunity to resolve [these ineffective-assistance claims] by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845. And he no longer can do so due to Ohio's filing deadlines, post-conviction procedures, and *res judicata* rules. *See* Ohio R. Crim. P. 33(B) (defendant may be entitled to new trial after deadline for filing motion for new trial if he was "unavoidably prevented" from filing motion or there is "newly discovered evidence"); Ohio Rev. Code §

19

2953.21(A)(1) (second, successive, or untimely post-conviction petition permitted if petitioner shows: (1) that he was "unavoidably prevented from discovery of the facts" of the claim, or the claim is based on a new federal or state right the Supreme Court has recognized that applies retroactively; *and* (2) but for constitutional error at trial, no reasonable factfinder would have found petitioner guilty of offense or eligible for death sentence); *State v. Perry*, 10 Ohio St. 2d 175, 180 (Ohio 1967) (Ohio's *res judicata* rule precludes a defendant from raising for the first time in post-conviction proceedings a claim that was fully litigated or could have been fully litigated at trial or on direct appeal.).

The claims are procedurally defaulted. *See Gray v. Netherland*, 518 U.S. 152, 161–62 (1996) (internal citations omitted)) ("Because the exhaustion requirement 'refers only to remedies still available at the time of the federal petition,' . . ., it is satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law' . . . ."); *Alley v. Bell*, 307 F.3d 380, 385 (6th Cir. 2002) ("[I]f an unexhausted claim would be procedurally barred under state law, that claim is procedurally defaulted for purposes of federal habeas review."). And Petitioner does not offer any argument regarding either the cause for, or prejudice resulting from, his procedural default of this claim. Nor does he contend that he is actually innocent such that the default should be excused.[3]

_____

[3] Petitioner's motion to amend and to stay these federal habeas proceedings pending exhaustion of claims in state court (Doc. 34) is denied on similar grounds. In that motion, Petitioner seeks to exhaust two additional ineffective-assistance claims, alleging trial counsel: (1) withheld exculpatory evidence; and (2) performed deficiently before trial, including during plea bargain negotiations. *See id*. at 10. As with the ineffective-assistance claims raised in his second ground for relief, Petitioner asserted these claims in his *pro se* motions for new counsel before the trial court and on direct appeal in support of his claim that the trial court erred in denying those motions. *See Long*, 19 N.E.3d at 989-91. But Petitioner did not raise the claims in state court as independent claims, and these claims, too, are procedurally defaulted. Furthermore, Petitioner's motion to amend

Accordingly, because Petitioner's second ground for relief is non-cognizable in part and procedurally defaulted in part, the undersigned recommends that it be dismissed.

*Ground Six: Ineffective Assistance of Appellate Counsel*

Petitioner argues in his sixth ground for relief that appellate counsel provided ineffective assistance by failing to submit his *pro se* "supplemental brief containing averments for dismissal pursuant to Crim. R. 29," and for failing to raise on direct appeal a claim that trial counsel was ineffective for failing to present evidence supporting the mitigating factor that the victim was released in a safe place. (Doc. 1, at 20-21). Respondent states that Petitioner raised this claim in his Rule 26(B) application to reopen, and it is ripe for federal habeas review. (Doc. 13, at 32). The undersigned disagrees.

Petitioner did not raise this claim in his reopening application or his first motion to amend his application. (*See* Doc. 13-1, Exs. 23, 32). He raised it only in his appeal of the appellate court's denial of his Rule 26(B) application to the Ohio Supreme Court. (*See* Doc. 13-1, Ex. 35, at 300). As noted above, federal habeas petitioners must fully exhaust claims by giving state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's

---

and to stay also fails because: (1) he provides no convincing excuse for having waited more than three years to file the claims in state court, especially when he made virtually the same arguments on direct appeal, albeit to support another claim; and (2) he provides no new evidence to demonstrate that he has any chance of success on the merits of these claims, which in essence already have been rejected by the state appellate court. *See Coe v. Bell*, 161 F.3d 320, 341 (6th Cir. 1998) (undue delay in filing, undue prejudice to the opposing party, and futility of amendment must be considered in assessing motions to amend habeas petitions); *Rhines v. Weber*, 544 U.S. 269, 275 (2005) (stay-and-abey procedure appropriate only when there is good cause for failure to exhaust in state court, the unexhausted claims are potentially meritorious, and there is no indication the petitioner engaged in intentionally dilatory tactics). Petitioner's motion to amend and to stay, therefore, is denied.

established appellate review process." *O'Sullivan* , 526 U.S. at 845 (1999). To provide state courts the necessary "opportunity," petitioners must "fairly present" federal constitutional claims "in each appropriate state court" before seeking relief in the federal courts. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). Petitioner did not meet this requirement because he fairly presented this claim only to the Ohio Supreme Court in an attempt to obtain discretionary review. "A habeas petitioner's submission of a new claim to the state's highest court on discretionary review is not a fair presentation to the state's courts." *Hruby v. Wilson*, 494 F. App'x 514, 517 (6th Cir. 2012) (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989)).

Moreover, for the reasons explained above, Petitioner no longer is able to raise this claim in state court, and it is procedurally defaulted. *See State v. Montgomery*, 997 N.E.2d 579, 592 (Ohio Ct. App. 2013) (Rule 26(B) application to reopen is a collateral post-conviction remedy to which *res judicata* applies). Petitioner further makes no argument regarding cause and prejudice or actual innocence to excuse the default. The undersigned, therefore, recommends that the Court dismiss Petitioner's sixth ground for relief.

## STANDARD OF REVIEW

When the basis for a federal habeas claim has been previously adjudicated by the state courts, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides the writ shall not issue unless the state decision "was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A federal court may grant habeas relief if the state court arrives at a decision opposite to that reached by the Supreme Court of the United States on a question of law, or if the state court

decides a case differently than did the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

The appropriate measure of whether or not a state court decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Williams*, 529 U.S. at 409-11; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000). To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011).

State trial court factual determinations are presumed correct and a petitioner must present clear and convincing evidence to the contrary in order to overcome the correctness presumption. 28 U.S.C. § 2254(e). "It is a clearly established rule that errors in the application of state law, especially rulings regarding the admission or exclusion of evidence, are usually not to be questioned in federal habeas corpus proceedings." *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988).

## DISCUSSION

### Grounds One, Three, Four, Five, and Seven: Ineffective Assistance of Appellate Counsel

Grounds for relief one, three, four, five, and seven all allege Petitioner was denied his Sixth Amendment right to the effective assistance of appellate counsel. Specifically, Petitioner claims that appellate counsel should have raised the following claims on direct appeal: (1) the kidnapping and felonious assault convictions "were obtained in violation of Petitioners [*sic*] Sixth Amendment right . . . to self-representation"; (2) trial counsel was ineffective for "failing to submit to the jury" the lesser included offense of felonious assault; (3) trial counsel was ineffective for failing "to submit

23

a [w]aiver of [c]ourt [c]ost[s]"; (4) trial counsel was ineffective for failing to "object to a [s]entence [c]ontrary [t]o [l]aw"; and (5) the trial court erred in finding a conviction for kidnapping when the jury verdict forms were inadequate to support that conviction. (Doc. 1, at 4-5, 11-13, 14-16, 17-19, 22-23).

Petitioner raised these claims in the state court of appeals in a Rule 26(B) application to reopen his direct appeal. The appellate court adjudicated the claims on the merits and denied them. (Doc. 13-1, Ex. 33). Petitioner appealed the appellate court's judgment to the Ohio Supreme Court, which declined jurisdiction. (Doc. 13-1, Exs. 35, 37). These claims, therefore, are preserved for habeas review.

The Supreme Court long has recognized that the Sixth Amendment right to the effective assistance of counsel at trial "is a bedrock principle in our justice system." *Martinez v. Ryan*, 132 S. Ct. 1309, 1317 (2012); *see also Gideon v. Wainwright*, 372 U.S. 335, 342-44 (1963). The Court announced a two-prong test for habeas claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, the petitioner must demonstrate that counsel's errors were so egregious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id* at 687. Second, the petitioner must show that he or she was prejudiced by counsel's errors. To do this, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

"*Strickland* specifically commands that a court 'must indulge [the] strong presumption' that counsel 'made all significant decisions in the exercise of reasonable professional judgment.'" *Cullen v. Pinholster*, 563 U.S. 170, 196 (2011) (quoting *Strickland,* 466 U.S. at 689-90). The Supreme Court has observed that the standards imposed by *Strickland* and § 2254(d) are both "highly

deferential," so that in applying them together, "review is 'doubly' so." *Harrington v. Richter,* 562 U.S. 86, 105 (2011).

The Supreme Court further has held that a defendant is entitled to effective assistance of counsel in his first appeal as a matter of right. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). The two-part test enunciated in *Strickland* is applicable to claims of ineffective assistance of appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). Thus, Petitioner must demonstrate that appellate counsel's performance was deficient, and that the deficient performance so prejudiced the appeal that the appellate proceedings were unfair and the result unreliable. *Strickland,* 466 U.S. at 687.

An appellant has no constitutional right, however, to have every non-frivolous issue raised on appeal, *Jones v. Barnes*, 463 U.S. 745, 750-54 (1983), and tactical choices regarding issues to raise on appeal are properly left to the sound professional judgment of counsel, *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). "[O]nly when issues are clearly stronger than those presented, will the presumption of effective assistance of [appellate] counsel be overcome." *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003) (internal quotation marks and citations omitted).

As noted above, the state appellate court, the last state court to address Petitioner's appellate counsel ineffective-assistance claims, rejected them. (Doc. 13-1, Ex. 33). Respondent states, with no argumentation, that the claims lack merit. (Doc. 13, at 38).

*Ground One: Right to Self-Representation*

Petitioner first argues that appellate counsel should have raised a claim that the trial court violated his Sixth Amendment right to self-representation. The state appellate court rejected the claim, explaining that it had "previously addressed this issue and found it lacking merit since his

25

request was made during the middle of his jury trial." (Doc. 13-1, Ex. 33, at 291). It cited the following discussion from its decision on direct review rejecting Petitioner's claim that the trial court erred in denying his request for substitute counsel:

> {¶ 42} During the middle of trial, and outside the presence of the jury, Long indicated that he believed that he was going to be forced to testify, which would be prejudicial to his defense. The trial court replied that the decision on whether he had to testify had not come yet, because it was still the middle of the prosecution's case-in-chief. Long then requested that after the prosecution's case-in-chief he wanted to continue the trial pro se. The trial court denied the request as being untimely.

> {¶ 43} Finally, after Long's trial counsel moved to acquit after the prosecution's case-in-chief, trial counsel and Long had a "heated" exchange as to whether Long would testify. Long indicated to the court that he was not going to testify. Long again discussed his dissatisfaction with trial counsel's decision not to obtain certain telephone records. When trial counsel asked for a moment to speak to his client in private, he indicated that he had met with his client alone at least 10 times and did not need someone in the room for his safety.

> {¶ 44} Based on the totality of the circumstances, we find no abuse of discretion in denying the motion. From our perspective, trial counsel and Long at times had significant disagreements over trial strategy; however, such disagreements alone are insufficient to create a complete breakdown in the relationship.

*Long*, 19 N.E.3d at 991.

In *Faretta v. California*, 422 U.S. 806 (1975), the Supreme Court held that the Sixth and Fourteenth Amendments guarantee to every defendant in a state criminal trial "the right to proceed *without* counsel when he voluntarily and intelligently elects to do so." *Id.* at 807 (emphasis in original). The Court implied this right from, among other things, "a nearly universal conviction, on the part of our people as well as our courts, that forcing a lawyer upon an unwilling defendant is contrary to his basic right to defend himself if he truly wants to do so." *Id.* at 817.

However, "[a]s the *Faretta* opinion recognized, the right to self-representation is not absolute." *Martinez v. Ct. of Appeal of Cal., Fourth App. Dist.*, 528 U.S. 152, 161 (2000). First, a

defendant may forfeit his self-representation right if he does not assert it "in a timely manner." *Id.* at 162. This limitation reflects that "[e]ven at the trial level . . . the government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer." *Id.* Thus, "if the right is asserted in an untimely manner, it may be deemed forfeited as a threshold matter." *Hill v. Curtin,* 792 F.3d 670, 677 (6th Cir. 2015).

In addition, the defendant must "'knowingly and intelligently" elect to conduct his own defense. *Faretta,* 422 U.S. at 835 (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464-65 (1938)). The *Faretta* Court explained:

> Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open."

*Id.* at 835 (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1943)). Because the risks posed by self-representation during trial are so great, a defendant will not be permitted to waive his Sixth Amendment right to counsel unless the court has made "searching or formal inquiry" to ensure that his waiver is knowing, intelligent, and voluntary. *Patterson v. Illinois*, 487 U.S. 285, 292 & n. 4, 298–300 (1988).

Here, Petitioner argues that the trial court's "failure to engage Petitioner in a Faretta [c]olloquy to fully and completely address Petitioner's request to proceed *pro se* at trial was a denial of Petitioner's Sixth Amendment [r]ight to [s]elf-[r]epresentation . . . ." (Doc. 1, at 5). As the Sixth Circuit recently observed in *Hill v. Curtin, supra*, however, "the U.S. Supreme Court has never held that a court must inquire into the basis of a defendant's request [to represent himself at trial] before denying it as untimely." *Hill*, 792 F.3d at 678. The court explained that "the purpose of the [*Faretta*] inquiry is to inform the defendant of the hazards of self-representation, not to determine whether a

27

request is timely. Habeas relief is not warranted on the ground that the trial court failed to conduct an inquiry." *Id.*

The circuit court further observed in *Hill* that while the *Faretta* Court did not establish a bright-line rule for timeliness, it explicitly stated that the defendant's request was "[w]ell before the date of trial," and "weeks before trial" in granting it. *Id.* (quoting *Faretta*, 422 U.S. at 807, 835). Therefore, "to the extent that *Faretta* addresses timeliness, as a matter of clearly established law it can only be read to require a court to grant a self-representation request when the request occurs weeks before trial." *Id.*[4] The Sixth Circuit then held that "in light of *Faretta*'s general standard and *Martinez*'s unequivocal pronouncement that the right to self-representation is 'not absolute' and observation that most courts find the right may be forfeited if not asserted 'in a timely manner,' the Michigan Supreme Court did not unreasonably apply clearly established federal law" in affirming the trial court's denial of the petitioner's request for self-representation made just as the trial was to begin. *Id.* at 680.

Here, Petitioner moved to represent himself in the middle of his trial – long after *Faretta*'s "weeks before trial" standard. As the state appellate court concluded, the request was untimely and properly denied, even without a *Faretta* hearing. Accordingly, the state court's decision upholding

---

[4] The Sixth Circuit cited as support for this proposition: *Marshall v. Taylor*, 395 F.3d 1058, 1060–61 (9th Cir. 2005) (discussing *Faretta*'s "timing element"); *United States v. Young*, 287 F.3d 1352, 1354 (11th Cir. 2002) ("The [*Faretta* ] Court mentioned the timeliness of the request in both the opening paragraphs and the breadth with which the Court announced its decision."); *Stenson v. Lambert*, 504 F.3d 873, 884 (9th Cir. 2007) ("*Faretta* does not articulate a specific time frame pursuant to which a claim for self-representation qualifies as timely . . . . The Supreme Court has never held that *Faretta*'s 'weeks before trial' standard requires courts to grant requests for self-representation coming on the eve of trial."); *Miller v. Thaler*, 714 F.3d 897, 903 n.5 (5th Cir. 2013) (denying habeas relief on a claim that the state court violated *Faretta* in denying the defendant's self-representation request "a few hours before jury selection"). *Hill*, 792 F.3d at 678.

the trial court's denial of Petitioner's request to represent himself was neither contrary to, nor an

unreasonable application of, *Faretta* or any other clearly established Supreme Court precedent. The

undersigned recommends that Petitioner's first ground for relief be dismissed.

*Ground Three: Ineffective Assistance of Trial Counsel / Jury Instruction*

Petitioner's third ground for relief alleges that appellate counsel should have raised a claim

that trial counsel was ineffective for failing to propose a jury instruction on a lesser-included offense

of felonious assault. (Doc. 1 at 11-13). He argues that such an instruction would have been

appropriate because there was sufficient evidence to show he was provoked by the victim and

suffering from "extreme emotional stress" at the time of the assault. *Id.*

The state appellate court, in addressing this claim, opined:

> Fifth, appellant claims his appellate counsel should have asserted that his trial
> counsel was ineffective based on his failure to secure an aggravated assault
> instruction as a lesser-included offense of felonious assault based on the victim's
> alleged verbal provocation. However, "[a]ggravated assault (R.C. 2903.12) is not a
> lesser included offense of felonious assault (R.C. 2903.11) but is the same offense
> as felonious assault with a reduction in penalty upon a determination by the trier of
> fact of the existence of the mitigating circumstance of sudden passion or sudden fit
> of rage, which mitigates a defendant's criminal culpability." *State v. Carter*, 23 Ohio
> App. 3d 27, 28, 491 N.E.2d 709, paragraph one of the syllabus.
>
> Furthermore, the evidence in appellant's case confirms that his felonious assault
> charge was appropriate. There was no evidence tending to show that appellant was
> provoked, and appellant likewise fails to direct our attention to any evidence of
> provocation at this juncture. App. R. 26(B)(2)(e). Thus, this argument lacks merit
> and does not necessitate reopening this appeal.

(Doc. 13-1, Ex. 33, at 292-93).

The state appellate court's decision was reasonable. First, although Petitioner does not refer

to aggravated assault in his Petition, to the extent he now challenges the state court's interpretation

of lesser-included offenses of felonious assault, the undersigned must defer to, and is bound by, the

29

state court's interpretation of state law. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (citing 28 U.S.C. § 2241); *see also Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."); *Engle v. Isaac*, 456 U.S. 107, 121 n.21 (1982) ("We have long recognized that a 'mere error of state law' is not a denial of due process." (citation omitted)).

Moreover, the undersigned also must defer to the state court's factual finding that neither the evidence in the trial-court record, nor anything submitted to the court post-conviction, demonstrated provocation such that an aggravated assault jury instruction would have been appropriate. "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). Petitioner states that a pastor, family, and friends could have testified about his emotional state at the time of the assault, and that "requested phone records that were denied" would have demonstrated the victim's "constant haranguing when [he] left their home that precipitated a verbal argument when he returned." (Doc. 1, at 13). But he does not point to anything in the record to overcome the presumption that the state court's factual determinations were correct by presenting clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e).

The state appellate court's decision does not contravene or misapply clearly established Supreme Court precedent, and is not based on an unreasonable determination of fact. Accordingly, the undersigned recommends that the Court dismiss Petitioner's third ground for relief.

*Ground Four: Ineffective Assistance of Trial Counsel / Waiver of Court Costs*

In his fourth ground for relief, Petitioner complains that appellate counsel should have presented on direct review a claim that trial counsel was ineffective for failing to obtain a waiver of court costs. (Doc. 1, at 14-15). The state appellate court addressed this claim, stating:

> Sixth, appellant claims his appellate counsel was ineffective for failing to argue that his trial counsel failed to secure a waiver of court costs and failed to object to the imposition of court costs and fines. Appellant presents no authority in support of his argument that an otherwise indigent criminal defendant does not have to pay court costs. He does, however, assert that he personally asked the trial court to waive court costs and fines at sentencing, which it did not do.
>
> In *State v. White*, 103 Ohio St. 3d 580, 2004-Ohio-5989, 817 N.E.2d 393, ¶14-15, the Ohio Supreme Court held:
>
> "R.C. 2947.23 requires a judge to assess costs against all convicted criminal defendants, and waiver of costs is permitted -- but not required -- if the defendant is indigent. * * *
>
> "The possible methods of collection are numerous, despite the lack of guidance from the Revised Code. One possibility is to assess costs and attempt collection though the defendant's prison account. Another is to attempt collection at a later date, when it becomes apparent that the defendant is no longer indigent. Yet another is to impose community service upon the defendant as a method to pay off or forgive costs. * * * We therefore limit our holding to rule only that a trial court may assess court costs against an indigent defendant convicted of a felony as part of the sentence and that a clerk of courts may attempt the collection of court costs assessed against an indigent defendant."
>
> As the state points out, the trial court in this case was well aware of appellant's indigency at the time of trial, that he had court-appointed counsel, and that he had an extensive criminal history. However, the trial court also knew appellant was not suffering from any disabling conditions that would preclude him from working and eventually paying court costs. Thus, it ordered him to pay costs. Accordingly, we disagree that appellant was denied the effective assistance of appellate counsel based on appellate counsel's failure to assert this argument on appeal.

(Doc. 13-1, Ex. 33, at 293-94).

Again, the state appellate court's decision denying Petitioner's claim regarding court costs rests on state law and is fully supported by the record. Petitioner advances no legal or factual

31

argument demonstrating the court's conclusion was contrary to, or an unreasonable application of, Supreme Court precedent, or was based on an unreasonable determination of the facts. Thus, the undersigned recommends that Petitioner's fourth ground for relief also be dismissed.

*Ground Five: Ineffective Assistance of Trial Counsel / Objection to Sentencing*

In his fifth ground for relief, Petitioner argues his appellate counsel was ineffective for failing to raise a claim on direct appeal regarding his trial counsel's failure to object to his sentence on the ground that the same conduct resulted in dual charges and convictions for felonious assault and kidnapping. (Doc. 1, at 17-19).

The state appellate court, in reviewing this claim, concluded that "[t]his issue . . . was addressed and overruled in [Petitioner's] direct appeal. Thus, this argument does not warrant the reopening of [Petitioner's] appeal." (Doc. 13-1, Ex. 33, at 294). The court cited this discussion from its earlier decision:

{¶ 59} As his sixth assignment of error, Long asserts that:

{¶ 60} "The trial court erred to the prejudice of the defendant-appellant by failing to merge allied offenses of similar import."

{¶ 61} We conduct a de novo review of an allied offenses question. *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 12. R.C. 2941.25 provides:

{¶ 62} "(A) Where the same conduct by a defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

{¶ 63} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

{¶ 64} In *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, a plurality of the Ohio Supreme Court announced a new two-part test to determine if two offenses were allied offenses of similar import. This court embraced and later adopted the lead opinion in *State v. May*, 11th Dist. Lake No. 2010–L–131, 2011-Ohio-5233, 2011 WL 4842452; . . . . The two-part test requires a court to first "consider whether it is possible to commit the offenses by the same conduct" and then consider "whether the offenses were, in fact, committed by the same conduct: i.e., 'a single act committed with a single state of mind.' " *State v. Biondo*, 11th Dist. Portage No. 2012–P–0043, 2013-Ohio-876, 2013 WL 950821, ¶ 6. "If both questions are answered affirmatively, then merger is appropriate." *Id*.

{¶ 65} As to the first prong of *Johnson*, it is possible to commit kidnapping under R.C. 2905.01(A)(3) and felonious assault with the same conduct and the same state of mind. Thus, the next issue is whether the crime was actually committed by a single act with a single state of mind.

{¶ 66} As to the second prong, Long punched Palmatier three times in the head in the living room, dragged her to the sliding glass door leading to the balcony where he proceeded to threaten to throw her off the balcony. From there, Palmatier attempted to escape to the kitchen; however, Long pulled her body towards himself, sat on her and threatened her with a knife. From these facts, Long committed felonious assault and then proceeded to kidnap her. The dragging of Palmatier to the balcony was not connected to the assault because the evidence indicates Long punched Palmatier three times before dragging her to the balcony. Consequently, the kidnapping was not incidental to the assault, and therefore the crimes were not committed by a single act. Furthermore, because there is no evidence that Long assaulted Palmatier after they left the bedroom, Long's threats to Palmatier reflected an intent to terrorize rather than cause serious physical harm. Therefore, there is a separate animus to the kidnapping as well.

*Long,* 19 N.E.3d at 993 (citations omitted).

Because the state appellate court determined that Petitioner's double jeopardy argument lacked merit, its subsequent denial of Petitioner's appellate counsel ineffective-assistance claim on that ground was reasonable. If the double jeopardy claim was meritless, Petitioner's trial counsel was not deficient for failing to object to the sentencing on that ground, and Petitioner was not prejudiced by his failure to do so. It follows that appellate counsel was not deficient for failing to

raise a trial counsel ineffective-assistance claim on that basis, and Petitioner was not prejudiced by his decision not to either.

The state appellate court's decision neither contravenes nor misapplies *Strickland,* and the undersigned recommends that the Court dismiss Petitioner's fifth ground for relief.

*Ground Seven: Trial-Court Error / Jury Verdict Forms*

Petitioner asserts in his seventh ground for relief that appellate counsel was ineffective for failing to raise a claim on direct appeal challenging the verdict forms used at his trial. (Doc. 1, at 22-23). He argues that the verdict forms did not contain "the statutory description" of the offenses of kidnapping and felonious assault and therefore "did not indicate that the jury considered and found [him] guilty of all the essential elements" of those offenses. *Id.*

The state appellate court, upon reviewing this claim, reasoned:

> Ninth and finally, he asserts his appellate counsel was ineffective based on his failure to challenge the verdict forms used in his case. This is the sole argument raised in appellant's motion to amend his App. R. 26(B) application for reopening. He claims that the verdict forms were defective since they did not comply with R.C. 2945.75(A)(2), which states:

> "A guilty verdict shall state either the degree of the offense of which the offender is found guilty, or that such additional element or elements are present. Otherwise, a guilty verdict constitutes a finding of guilty of the least degree of the offense charged."

> Thus, he alleges that he was erroneously convicted of kidnapping, as a first-degree felony, because the jury did not comply with R.C. 2945.75(A)(2). However, the Fourth District Court of Appeals in *State v. Markins*, 4th Dist. Scioto No. 10CA3387, 2013-Ohio-602, ¶40, explained that kidnapping is a first-degree felony that may be reduced to a second-degree felony if the offender releases the victim in a safe place and unharmed. However, releasing the victim in a safe place is not an element of the offense, but an affirmative defense with the burden of proof on the defendant. *Id.* Thus, the verdict form in appellant's case did not have to include the degree of the offense or any aggravating elements under R.C. 2945.75(A)(2) because kidnapping is a first-degree offense unless a defendant establishes the mitigating factor of

releasing the victim in a safe place. *Id.* at ¶80; *State ex rel. McKinney v. McKay*, 11th Dist. Trumbull No. 2011-T-0039, 2011-Ohio-3756, ¶32-33.

Based on the foregoing, appellant has failed to identify a colorable claim of ineffective assistance of appellate counsel under App. R. 26(B)(5) because he has failed to show that his appellate counsel's representation was deficient and that the alleged deficiency prejudiced the outcome of the appeal. Appellant's application to reopen his appeal is overruled.

(Doc. 13-1, Ex. 33, at 295-96).

As noted above, federal habeas courts must defer to state-court rulings on state law. *See, e.g., Estelle,* 502 U.S. at 68 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). The state appellate court here determined that the verdict forms used at Petitioner's trial complied with Ohio law, and Petitioner has presented no argument beyond conclusory allegations explaining why this state-law issue was even colorable, much less "clearly stronger than" the other claims appellate counsel raised. *Joshua,* 341 F.3d at 441.

Accordingly, Petitioner has not shown that the state appellate court's decision rejecting his appellate counsel ineffective-assistance claim based on the trial court's use of allegedly improper jury verdict forms contravened or misapplied *Strickland* or its progeny. The undersigned recommends that the Court dismiss Petitioner's seventh ground for relief.

## CONCLUSION AND RECOMMENDATION

Ground One fails on the merits. Ground Two is non-cognizable on federal habeas review in part and procedurally defaulted in part. Grounds Three through Five fail on the merits. Ground Six is procedurally defaulted. Ground Seven fails on the merits. There has been no demonstrated need for an evidentiary hearing. Finally, Petitioner has not established any error resulting in a denial of fundamental fairness or cause to hesitate due to the probability of actual innocence. The undersigned therefore recommends the Petition (Doc. 1) be denied and dismissed in its entirety. In addition,

Petitioner's motion seeking leave to amend his Petition and to stay these habeas proceedings pending exhaustion of state-court remedies (Doc. 34) is denied.

                                                   s/James R. Knepp II
                                           United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).